# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2826 | **DATE** | 12/4/2001 |
| **CASE TITLE** | Ceyda vs. Zionts, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court GRANTS plaintiffs' motion to consolidate the derivative actions [#0-1] [#11-1], Case No. 01 C 2826 and Case No. 01 C 5931, and any shareholder derivative actions that are similar in fact and law, including Rothchild's derivative complaint pursuant to its Order of November 27, 2001. For administrative purposes, all pleadings and papers for the derivative actions will hereafter be filed under the lower case number, which is Case No. 00 C 2826. Furthermore, the court GRANTS Dollens' and Vukovich's motion to appoint them as co-lead plaintiffs, Schiffrin & Barroway and Garwin Bronzaft as co-lead counsel and Robert D. Allison and Associates as liaison counsel. [#11-2]. The court DENIES Ceyda's motion for the court to appoint Ceyda as lead plaintiff and Hedlund Hanley as lead counsel [#0-2] [#0-3], and DENIES Rothchild's motion for the court to appoint him as lead plaintiff, Cauley Geller Bowman & Coates as lead counsel and David B. Kahn & Associates, Ltd. as local counsel [#18-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 13 | Document Number |
| | No notices required. | | DEC 06 2001 | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | 24 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 12/4/2001 | |
| MD | courtroom deputy's initials | 01 DEC -4 PM 5:03 | date mailed notice | |
| | | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY DOLLENS and JEFF VUKOVICH, derivatively on behalf of WESTELL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MARC ZIONTS, J. WILLIAM NELSON, HOWARD KIRBY, JR., THOMAS A. REYNOLDS, ROBERT C. PENNY, III and MELVIN J. SIMON, <br><br> Defendants. <br><br> and <br><br> WESTELL TECHNOLOGIES, INC., <br><br> Nominal Defendant. | Case No. 01 C 5931 <br> Judge Joan H. Lefkow |
| THE CEYDA FOUNDATION TRUST, Dated 12/17/96, derivatively on behalf of WESTELL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MARC ZIONTS, J. WILLIAM NELSON, HOWARD KIRBY, JR., THOMAS A. REYNOLDS, ROBERT C. PENNY, III and MELVIN J. SIMON, <br><br> Defendants. <br><br> and <br><br> WESTELL TECHNOLOGIES, INC., <br><br> Nominal Defendant. | Case No. 01 C 2826 |

DOCKETED DEC 0 6 2001

# MEMORANDUM OPINION AND ORDER

The captioned cases are shareholder derivative actions filed by shareholders of Westell Technologies, Inc. ("Westell") claiming breach of fiduciary duty for alleged actions of various officers and directors of Westell. Westell is a Delaware corporation with its principal place of business within the Northern District of Illinois. None of the plaintiffs is alleged to be a citizen of Delaware. Therefore, the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The motions before the court concern consolidation of the derivative actions and appointment of lead plaintiff and lead counsel. For reasons set out below, the actions will be consolidated and the court will appoint Jeffrey Dollens ("Dollens") and Jeff Vukovich's ("Vukovich") as co-lead plaintiffs, Schiffrin & Barroway, LLP ("Schiffrin & Barroway") and Garwin, Bronzaft, Gerstein, & Fisher, LLP ("Garwin Bronzaft"), as co-lead counsel and Robert D. Allison & Associates as liaison counsel.

## FACTS AND PROCEDURAL HISTORY

On or about January 26, 2001, plaintiff Vukovich, by his attorneys Schiffrin & Barroway, filed a derivative action in Delaware claiming breach of fiduciary duty for various alleged actions of and statements by defendants, Marc Zionts, J. William Nelson, Howard L. Kirby, Jr., Thomas A. Reynolds, Robert C. Penny, III, and Melvin J. Simon (collectively "defendants") and Westell as nominal defendant. On December 4, 2000, Dollens, by his attorneys Garwin Bronzaft, filed a similar derivative suit in Delaware. On April 20, 2001, Ceyda, by its attorneys Hedlund, Hanley, Koenigsknecht, Trafelet ("Hedlund Hanley"), filed a similar derivative action in the Northern District of Illinois. On June 28, 2001, the Court of Chancery for the State of Delaware, deferring

to this forum, stayed proceedings in *Dollens* and *Vukovich*, and on August 2, 2001, Dollens and Vukovich jointly refiled in this court, with the expectation that the Delaware actions would be dismissed. On November 27, 2001, after having been granted leave to intervene, Joseph B. Rothchild ("Rothchild") filed a third shareholder derivative action in this court, thereby substituting it for an action then pending in the Circuit Court for the Sixteenth Judicial Circuit (Kane County) of Illinois.[1] A related securities fraud putative class action, having withstood a motion to dismiss, is also pending. Ceyda's counsel advises, "[T]here remains the potential for more." (Ceyda's Mot. ¶ 4.)

Although all the plaintiffs agree that their derivative actions and any future shareholder derivative actions that arise from the same or substantially the same set of facts should be consolidated, each seeks to be appointed, with their respective attorneys, as lead plaintiff and counsel, and Dollens[2] and Rothchild further request additional attorneys be appointed liaison or local counsel if needed. Ceyda, in opposition, contends that representation of plaintiffs by Schiffrin & Barroway and Robert D. Allison & Associates, both attorneys for Dollens, presents a conflict of interest.

## DISCUSSION

### A. Consolidation of the Derivative Actions

The court already indicated on the record its willingness to consolidate the actions. A court may consolidate separate cases before it under Fed. R. Civ. P. 42(a), which states:

---

[1] *Rothchild v. Zionts, et al.*, No. 01-LK-159, filed May 31, 2001. The plaintiff represented that this action has been stayed and once the federal case was filed he would dismiss the Illinois court action.

[2] For convenience, the captioned complaint of Dollens and Vukovich will be referred to as "*Dollens*" unless otherwise specified. Messrs. Dollens and Vukovich will be referred to collectively as Dollens.

3

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such proceedings therein as may tend to avoid unnecessary costs or delay.

*See Johnson* v. *Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990) ("Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay."); *Ikerd* v. *Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970); *United States* v. *Knauer*, 149 F.2d 519, 520 (7th Cir. 1945), *aff'd on other grounds, Knauer* v. *United States*, 329 U.S. 818 (1946). A court has discretion to consolidate related cases, which involve common questions of fact and law under Fed. R. Civ. P. 42(a), "under the policy that considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event." *Ikerd*, 435 F.2d at 204; *In Re Nuveen Fund Litig.*, No. 94 C 0360, 1994 U.S. Dist. LEXIS 13098 (N.D. Ill. Sept. 9, 1994), at *4-5. A court, however, should not consolidate actions when consolidation will prejudice a party. *In Re Nuveen Fund Litig.*, 1994 U.S. Dist. LEXIS, at *4-5.

Plaintiffs allege against the same director defendants that, from approximately June to September 2000, the director defendants intentionally breached their fiduciary duty to Westell and its shareholders in order to garner personal gain through misappropriation of information and insider trading. The *Ceyda* complaint also alleges negligent breach of fiduciary duty. The cases involve common questions of law and fact. No party argues here that it will be prejudiced by consolidation. As such, consolidation of *Ceyda, Dollens, Rothchild* and any future shareholder derivative actions based on the same or similar set of facts and law into one action is appropriate.

B.  **Appointment of Lead Plaintiff and Lead Counsel**

Under Fed. R. Civ. P 23.1, "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders . . . similarly situated in enforcing the right of the corporation or association." At this time, each plaintiff appears to fairly and adequately represent the interests of shareholders because each held shares during the time period in question, each is represented by able and experienced counsel, and no party appears subject to a unique defense that might make the party's status as lead plaintiff problematic. Thus, it becomes necessary to choose among them based on more or less marginal factors that tend to indicate that one plaintiff is likely to benefit the plaintiffs *most*.

At the threshold, Hedlund Hanley raises the issue that attorneys at Schiffrin & Barroway (namely Robert B. Weiser) and Robert D. Allison & Associates (namely Robert D. Allison) for Dollens have a conflict of interest in seeking to represent the derivative plaintiffs because they previously represented plaintiffs in the securities fraud class action.

Pertaining to conflicts of interests, this court's Local Rule 83.51.9 provides,

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after disclosure.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
>> (1) whose interests are materially adverse to that person, and
>>
>> (2) about whom the lawyer had acquired information protected by LR 83.51.6 and LR83.51.9(c) that is material to the matter;
>
> unless the former client consents after disclosure.

5

>   (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> > (1) use information relating to the representation to the disadvantage of the former client except as LR83.51.6 or LR83.53.3 would permit or require with respect to a client, or when the information has become generally known; or
> >
> > (2) reveal information relating to the representation except as LR83.51.6 or LR83.53.3 would permit or require with respect to a client.

In support of its position, Hedlund Hanley cites the court's own decision, *Wittenborn v. Pauly*, No. 87 C 5814, 1988 WL 33723, at *3 (N.D. Ill. Apr. 1, 1988). In *Wittenborn*, this court disqualified defendant's counsel in a multi-count complaint that included a shareholder derivative suit from *simultaneously* representing both the defendant closely-held corporation and the individual defendants on the basis that the interests of the corporation and the individual defendants were materially adverse. Unlike *Wittenborn*, the pending case deals with whether counsel who previously represented plaintiffs in the related class action, after having withdrawn from that representation, may represent the derivative plaintiffs. Plaintiffs call the alleged conflict of interest based on prior representation of plaintiffs in the securities fraud class action a "surface duality" because the proof in both cases rests on the same nucleus of facts. *See In re Dayco Corp. Sec. Litig.*, 102 F.R.D. 624, 630-31 (S.D. Ohio 1984).[3]

---

[3]The court in *In re Dayco Corp. Sec. Litig.*, wrote,

Nearly twenty years ago, Judge Marvin Frankel rejected the position advanced by Defendant[, in which he stated,] "As to the role of plaintiffs as both 'friend' and 'enemy' to the corporation, this surface duality is in fact a routine matter in the courts.". . . *Heilbrunn v. Hanover Equities Corp.*, 259 F. Supp. 936, 939 (S.D.N.Y. 1966). Most courts have followed Judge Frankel's emphasis on the "surface duality" of joining individual and derivative actions, and held that the "theoretical conflict of interest" does not justify a per se test prohibiting joinder of such actions. These same courts have added that a different result might [be] obtain[ed] if the potential conflict of interest

(continued...)

Under the governing local rule LR 83.51.9, both subparagraphs (a) and (b) permit the former client to consent to the representation after disclosure. It is apparent that the class plaintiffs both know the situation and do not object to it. This appears to resolve the matter.[4] Neither is it apparent either than the interests of the two sets of plaintiffs are materially adverse under subparagraph (b)(2) and Ceyda does not explain how the parties are *materially* adverse. The plaintiffs in both cases need to prove the malfeasance of the same individual defendants based on the same set of facts. Although recovery in the derivative suit could require individual directors to return money to the corporation itself, while recovery in the class action would require the individual defendants and the corporation to compensate the plaintiffs directly, the source of the recovery is the same, and the shareholders benefit from either result. To the extent their interests diverge, the plaintiffs are now represented by separate counsel. See *In re Continental Illinois Sec. Litig.*, 750 F. Supp. 868, 875 (N.D. Ill. 1990), *rev'd on other grounds*, 962 F.2d 566 (7th Cir. 1992) (court referred to its earlier ruling that potential conflict existed preventing class plaintiffs and derivative plaintiffs from being jointly represented by counsel, particularly in the area of settlement negotiations where the two kinds of plaintiffs might be competing for limited funds and noting that, in fact, the respective plaintiffs' interest did diverge

---

[3](...continued)
ripens into an actual conflict. *See, In Re Transocean Tender Offer Securities Litigation*, 455 F. Supp. 999, 1014 (N.D. Ill. 1978) (relying on *Bertozzi v. King Louis International, Inc.*, 420 F. Supp. 1166, 1179-80 (D.R.I. 1976))....

[The theoretical distinction] is just that, a theoretical one, not rooted in the realities of most individual and derivative suits, which usually are "equally contingent upon the proof of the same nucleus of facts." *Bertozzi*, F. Supp. at 1180.

102 F.R.D. 624, 630-31 (S.D. Ohio 1984).

[4]It further distinguishes the situation presented in *Wittenborn* which involved a corporation, whose principals were also defendants. Whether a corporation could consent in such a situation is questionable.

in regard to liability insurance coverage on the defendant bank officers). Therefore, the court concludes that plaintiffs' counsel are not disqualified by a conflict of interest.

Turning now to the central issue of appointment of lead plaintiff and counsel, the first question is what standard to apply. Dollens argues that this court must apply the law of Delaware to determine who will be lead plaintiff, citing a reference in *In re Continental Illinois Securities Litigation* to the applicability of Delaware law to considerations of whether it was in the corporation's best interest to dismiss various derivative claims. 732 F.2d 1302, 1304 (7th Cir. 1984). In an action based on diversity jurisdiction, a federal court will apply the Federal Rules of Civil Procedure unless the issue rests on substantive state law. *See, e.g., Erie R. Co. v. Tompkins*, 304 U.S. 64, 77-80 (1938); *see also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426-431 (1996). Although Delaware law applied in *In re Continental Illinois Securities Litigation* to the issue of best interest of the corporation, the issue for decision in that opinion – whether a special litigation committee report concluding that dismissal was in the corporation's interest must be disclosed to the media – was decided under federal law. *See id.* at 1302-10. Lacking any more persuasive authority for a rule that Delaware law applies, and intuitively discerning that questions surrounding leadership of the litigation are essentially ones of case management, the court will apply factors it believes valid in light of the collective wisdom of other state and federal judges.[5]

---

[5] There is some conflicting secondary authority pertaining to whether or not a federal court must apply state law to determine who is lead plaintiff in a derivative action. *See* Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 1833 (stating "in making the determination whether a particular shareholder meets the adequacy of representation requirement, federal law will govern."); BUSINESS AND COMMERCIAL LITIGATION IN FEDERAL COURTS § 16.6 ("While state substantive law governs the typical derivative claim, the court whose jurisdiction is invoked generally will apply its own procedural law. Whether an issue is substantive or procedural is not always readily apparent."); *but see* SECURITIES AND FEDERAL CORPORATE LAW § 22:43 ("In a derivative action brought in federal

(continued...)

Dollens relies on *TCW Technology Limited Partnership v. Intermedia Communications, Inc.*, which recites the following criteria: (1) "the quality of the pleading that appears best able to represent the interests of the... derivative plaintiffs"; (2) "the shareholder plaintiff that has the greatest economic interest in the action"; and (3) "whether a particular litigant has prosecuted its lawsuit with greater energy, enthusiasm or vigor than have other similarly situated litigants." No. 00 C 18336, 2000 Del. Ch. LEXIS 147, at *10-11 (Del. Ch. Oct. 17, 2000) [hereinafter *TCW*]. Ceyda urges the court to adopt the criteria set out in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4,[6] for fraud actions filed under the Securities

---

[5](...continued)
court based upon diversity of citizenship, state 'procedural' requirements relating to derivative actions (such as posting security for costs) are substantive for *Erie R. Co.* v. *Tompkins* purposes and are, therefore, applicable to the federal courts."). Two of these secondary authorities rely, in part, on *Cohen v. Beneficial Industrial Loan Corporation,* to support their conflicting positions. 337 U.S. 541 (1949). *Cohen* held that a federal court sitting in diversity in a shareholder derivative suit must apply state law to the question whether the plaintiff was obligated under a statutory procedure by which the corporate defendant is entitled to a bond of indemnity from the plaintiff. *Id.* at 554-56. In making its decision, the Court reasoned, "[The New Jersey law] creates a new liability where none existed before, for it makes a stockholder who institutes a derivative action liable for the expense to which he puts the corporation and other defendants, if he does not make good his claims. Such liability is not usual and it goes beyond payment of what we know as 'costs.' If all the Act did was to create this liability, it would clearly be substantive." *Id.* at 555-56. Because the questions of lead plaintiff and lead counsel do not create any additional liabilities, this is a question of federal procedure.

[6]Ceyda specifically relies on 15 U.S.C. § 78u-4(a)(3)(B) for appointment of lead plaintiff, which states:

(B) Appointment of lead plaintiff
(i) In general
Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court ... shall appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

\* \* \*

(iii) Rebuttable presumption
   (I) In general
   Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
      (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
      (bb) in the determination of the court, has the largest financial interest in the relief sought
(continued...)

9

Exchange Act of 1934 and the Securities Act of 1933 on the grounds that a number of federal cases have done so in derivative actions. *See, e.g., In re Conseco, Inc. Sec. Litig. and In re Conseco, Inc. Derivative Litig.*, 120 F. Supp. 2d 729, 733 (S.D. Ind. 2000) [hereinafter *Conseco*]. As set out in the margin, the PSLRA directs the court to adopt a presumption that the most adequate plaintiff is the one with the largest financial interest in the relief sought by the class. The presumption may be rebutted only on proof that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C .§ 78u-4(a)(3)(B).

In addition, Congress expressed its desire for institutional investors to take control of private class action securities litigation through the lead plaintiff provisions. S. Rep. 104-98, 1995 U.S.C.C.A.N. 679, 689; H.R. Conf. Rep. 104-369. In large part, this is due to the fact that institutional investors are most likely to have the largest financial interest in the case. In favoring institutional investors, Congress believed such investors were more likely to carry out the stated

---

[6](...continued)
    by the class; and
    (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
  (II) Rebuttal evidence
  The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff–
    (aa) will not fairly and adequately protect the interests of the class; or
    (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. . . .

(v) Selection of lead counsel
The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.

The court recognizes that 15 U.S.C. § 77z-1(a)(3)(B) also stands for the same proposition.

purpose of the PSLRA, which was in part to prevent lawyers from creating a lawsuit and then seeking a representative plaintiff. *See* Congressional Reports, *supra*. "According to one representative of institutional investors [who testified before Congress], 'As the largest shareholders in most companies, we are the ones who have the most to gain from meritorious securities litigation.'" *See* Congressional Reports, *supra*. The court in *TCW* opined that Congress enacted the largest financial interest provision and indicated a preference for institutional investors under this provision so that courts would not appoint lead plaintiffs simply based on who was first to file a derivative action. 2000 Del. Ch. LEXIS 147, at *3 (determining that there is no special status for plaintiffs who were first to file complaint). Because the *TCW* factors and the PSLRA factors are all relevant to the decision, the court addresses each (as well as one additional factor), although it will not apply the PSLRA's rebuttable presumption in favor of the largest investor but rather consider it along with other factors in weighing the best interest of the plaintiffs.

### 1. *The largest financial interest*

The holdings of the various plaintiffs and the intervenor are represented to be as follows: Vukovich, 350 shares; Dollens, 2,000 shares; Ceyda, 2,000 shares; and Rothchild, 66,000 shares. Prior to Rothchild's intervention, Ceyda and Dollens each claimed the largest financial interest,

but neither has a particularly large financial stake compared to Rothchild's 66,000.[7] Clearly, Rothchild is the plaintiff with the largest financial interest.

### 2. *Institutional investor preference*

Only Ceyda qualifies here, but the policy considerations that favor institutional investors do not readily fit where Ceyda is concerned. It is not a large institutional investor, nor have any facts been proffered that would suggest that Ceyda has any greater incentive to litigate this case than any other plaintiff who seeks to lead.

### 3. *The quality of the pleading*

The court finds the pleadings in each action of high quality. The court does take note of Dollens' displeasure that Ceyda filed its complaint five months later and appears to have merely reworked Dollens' complaint. Ceyda does not respond to this allegation in any of its corresponding briefs, so an inference that this occurred is appropriate and suggests that Ceyda at least believes that Dollens' lawyers crafted a quality complaint. Rothchild's complaint is nearly the same as that of Dollens.

---

[7]Courts are split over whether individual investors may aggregate their shares to claim the lead plaintiff prize. *See, e.g., See, e.g., In re Conseco, Inc. Sec. Litig. and In re Conseco, Inc. Derivative Litig.*, 120 F. Supp. 2d 729, 733 (S.D. Ind. 2000) (in appointing institutional investor as lead plaintiff in securities action and not group of investors, court determined that "[w]hile a lead plaintiff 'group' may be permissible, this District Court has stressed that aggregating parties 'that have nothing in common with one another beyond their investment is not an appropriate interpretation of the term "group" in the PSLRA.'") (citation omitted); *but see In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) [hereinafter *Cendant*]. In *Cendant*, the Third Circuit stated:

> The [PSLRA] contains no requirement mandating that the members of a proper group be "related" in some manner; it requires only that any such group "fairly and adequately protect the interests of the class." We do not intimate that the extent of the prior relationships and/or connection between the members of a movant group should not properly enter into the calculus of whether that group would "fairly and adequately protect the interests of the class," but it is this test, not one of relatedness, with which courts should be concerned.

264 F.3d at 267. This court agrees with *Cendant*'s reasoning.

### 4. *Vigorousness of prosecution of the lawsuits*

Dollens and Vukovich raise this factor to indicate that they have pursued this litigation more vigorously than Ceyda and Rothchild. According to Dollens, they not only filed the derivative action five months before Ceyda filed but also Dollens has filed numerous discovery requests as opposed to Ceyda's none. Although it appears that the firms representing *Dollens*, *Ceyda*, and *Rothchild* are all capable of vigorously representing the derivative litigants, the court agrees with Dollens that they have been more vigorous in prosecuting the case.

### 5. *Attorneys' fees*

The court requested the attorneys for the *Dollens* and the *Ceyda* plaintiffs to submit a letter concerning their anticipated fees. Both have expressed a willingness to accept the court's decision concerning a reasonable fee. The court has not used differences in the submissions as a basis for its decision to appoint lead plaintiff and counsel other than to caution lead plaintiffs' counsel, which in this case turns out to be three sets of lawyers, that it will look closely at duplication of effort and may require considerable detail in considering fees should plaintiffs prevail.

## CONCLUSION

Based on all of the factors on which the parties have relied, the court concludes that Dollens and Vukovich should be co-lead plaintiffs. They have, in fact, been the leaders of the litigation. Although Ceyda is an institutional investor, as indicated above, in this instance, the court is not swayed by that factor. The court is not inclined to appoint Rothchild as lead plaintiff, even though he has the largest financial interest, where he has simply adopted the complaint of Dollens and has not otherwise demonstrated his ability to prosecute the case any more vigorously

13

than other plaintiffs. Inasmuch as the co-lead plaintiffs, absent extraordinary circumstances, should be able to select their own counsel, the court will appoint Schiffrin & Barroway and Garwin Bronzaft as co-lead counsel. Robert A. Allison & Associates is appointed to serve as liaison counsel in order to avoid unnecessary expense resulting from lead counsels' distance from the forum.

## ORDER

For reasons set forth above, the court GRANTS plaintiffs' motion to consolidate the derivative actions, Case No. 01 C 2826 and Case No. 01 C 5931, and any shareholder derivative actions that are similar in fact and law, including Rothchild's derivative complaint pursuant to its Order of November 27, 2001. [Case No. 00 C 6735 [#35-1]], [Case No. 01 C 2826 [#0-1] [#11-1]], [Case No. 01 C 5931 [#0-1]]. For administrative purposes, all pleadings and papers for the derivative actions will hereafter be filed under the lower case number, which is Case No. 01 C 2826. Furthermore, the court GRANTS Dollens' and Vukovich's motion to appoint them as co-lead plaintiffs, Schiffrin & Barroway and Garwin Bronzaft as co-lead counsel and Robert D. Allison and Associates as liaison counsel. [Case No. 01 C 2826 [#11-2]], [Case No. 01 C 5931 [#0-2]]. The court DENIES Ceyda's motion for the court to appoint Ceyda as lead plaintiff and Hedlund Hanley as lead counsel, [Case No. 00 C 6735 [#35-1] [#35-2]], [Case No. 01 C 2826 [#0-2] [#0-3]], [Case No. 01 C 5931 [#0-2] [#0-3]], and DENIES Rothchild's motion for

14

the court to appoint him as lead plaintiff, Cauley Geller Bowman & Coates as lead counsel and David B. Kahn & Associates, Ltd. as local counsel, [Case No. 01 C 2826 [#18-1]].

ENTER:

Dated: December 4, 2001

JOAN HUMPHREY LEFKOW
United States District Judge